UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>AMSTED RAIL CO., INC.,<br><br>        Defendant. | Case No. 14-cv-1292-JPG-SCW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Commission") motion for partial summary judgment on the issue of whether the EEOC has attempted to conciliate this dispute with defendant Amsted Rail Co., Inc. ("Amsted") as required by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117 (incorporating the enforcement procedures of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(b)) (Doc. 33). Amsted has responded to the motion (Doc. 39), and the EEOC has replied to that response (Doc. 41). The EEOC also asks the Court to strike certain portions of Amsted's response on the grounds that those portions violate the confidentiality provisions set forth in 42 U.S.C. § 2000e-5(b) (Doc. 40). Amsted has, in turn, responded to the EEOC's motion to strike (Doc. 42).

**I.    Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. If the moving party bears the burden of persuasion on an issue at trial, as the EEOC will for the issue in question in this case, it must present evidence that conclusively establishes it is entitled to a judgment as a matter of law. The movant must establish that no reasonable jury could find for the non-moving party.

## II.     Facts

As a preliminary matter, the Court has disregarded or considered for a limited purpose some of the evidence submitted by the parties. That evidence and the Court's reasons for disregarding or limiting it are explained as necessary elsewhere in this order. Viewing the rest of the evidence and drawing all reasonable inference in favor of Amsted, the evidence establishes the following relevant facts.

Amsted operates a facility in Granite City, Illinois, where it employs individuals as "chippers." A chipper's duties include using a hammer or grinder to remove metal protrusions from steel castings. Amsted requires those applying to be chippers to submit to a medical evaluation, which includes a medical history questionnaire and a nerve conduction test. In 2011, Montrell Ingram, who had a history of carpal tunnel syndrome, applied to be a chipper and was offered the position contingent upon his passing the medical evaluation. After completing the evaluation, Amsted declined to hire Ingram on the grounds that he was not medically qualified.

On March 2, 2011, Ingram filed a charge of discrimination with the EEOC. In that charge, he complains, among other things, that Amsted discriminated against him on the basis of an actual disability, a perceived disability or a record of disability when it failed to hire him as a chipper.

Specifically, his charge stated:

> I.  Approximately 5 years ago, I was diagnosed with a disability. I applied for a Chipper position with Amsted Rail Co., Inc. on or about 2/8/2011. I interviewed for this position on 2/16/2011. On 2/16/2011, I also completed a medical history form that asked for family medical information; drug screen; hearing test; vision test and a nerve conduction test. On 2/17/2011, I completed a physical exam with the company physician. All of these actions were prior to being offered a position with the employer.
>
> II.  On 2/17/2011, the company physician told me that Amsted Rail Co., Inc. does not hire persons with my disability or those having had a record of this disability for Chipper positions and that my application would be kept on file for 6 months.
>
> III.  For the above reasons, I believe that I have been discriminated against based on my disability, a perceived disability and/or my record of disability and medical history/genetic information, in violation of the Americans with Disabilities Act of 2009 and the Genetic Information Nondiscrimination Act of 2008.

Ingram's charge did not identify the nature of his disability.

Two weeks later, on March 16, 2011, the EEOC sent notices of Ingram's charge to two Amsted officers and an officer of Amsted Industries, Inc. and enclosed a copy of Ingram's charge. The notice did not identify the nature of Ingram's disability.

During the EEOC's investigation of Ingram's charge, the EEOC communicated with Amsted but was not responsive to Amsted's requests for information about the charge or for an explanation of the basis of the charge.[1] On June 10, 2011, the EEOC sent Amsted a letter stating that it was expanding its investigation to a class of chipper applicants "who were not hired because they either had a record of carpal tunnel syndrome or failed a nerve conduction test."

On February 28, 2013, the EEOC issued a "Letter of Determination" to Ingram and

---

[1] Amsted describes its efforts after it received notice of Ingram's charge to cooperate with the EEOC's investigation and to mediate Ingram's dispute (Def.'s Summ. J. Resp. § III, ¶¶ 1-16). It also chronicles the EEOC's lack of responsiveness to its inquiries into the basis for the charge. While this information serves as a background to the inquiry about the EEOC's later efforts at formal conciliation, it is not directly relevant to those efforts and will not be considered by the Court in that respect.

Amsted regarding Ingram's charge.  Specifically, the Letter of Determination stated, in pertinent part:

> Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under the Americans With Disabilities Act as amended (ADA). . . .
>
> All requirements for coverage have been met.  Charging Party [Ingram] alleges that the Respondent [Amsted] . . . denied him hire into Chipper position because of his disability, perceived disability and/or record of disability. . . .
>
> * * *
>
> Respondent denies the allegation that it discriminated against Charging Party.  The Respondent contends that Charging Party was not hired due to Respondent's contracted physician's, determination that Charging Party was not medically qualified to perform the Chipper position due to Charging Party's previous surgery on both hands for Carpal Tunnel Syndrome.  The Respondent further contends that Charging Party was at substantial risk for further injury to himself if he performed the essential functions of the Chipper position.
>
> Evaluation of the evidence reveals reasonable cause to believe that Charging Party's allegations regarding hiring are true and that Respondent discriminated against Charging Party on the basis of disability in violation of the Title I of the Americans with Disabilities Act, as amended (ADA) 42 U.S.C. 12112(b); 29 C.F.R. Sec. 1630.4.
>
> In addition, evaluation of the evidence obtained shows that Respondent denied hire to class of Chipper applicants based on the outcome of each applicant's nerve conduction test; thus, denying each a Chipper position because of his disability, perceived disability and/or record of disability.
>
> Based upon the foregoing, there is reasonable cause to believe that Respondent discriminated against a class of Chipper position applicants on the basis of disability in violation of the Title I of the Americans with Disabilities Act, as amended (ADA) 42 U.S.C. 12112(b); 29 C.F.R. Sec. 1630.4. . . .
>
> Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation.  Therefore, the Commission now invites the parties to join with it in reaching just resolution of this matter.  The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

* * *

. . . . A Commission representative will contact each party in the near future to begin conciliation.

Also on February 28, 2013, the EEOC issued a letter to Amsted's counsel inviting Amsted to respond to the invitation to conciliate the dispute. Communications between the parties ensued, the contents of which are the subject of the EEOC's motion to strike (Doc. 40).

Nearly a year later, on February 12, 2014, the EEOC notified Amsted that it had determined conciliation efforts had been unsuccessful and that it would not pursue further efforts. The EEOC then filed this lawsuit in November 2014.

In its First Amended Complaint, the EEOC alleges Amsted violated the ADA when it denied Ingram and a class of job applicants employment because it regarded them as disabled or because they had a record of disability. The disability in question is carpal tunnel syndrome. Amsted raised a defense that the EEOC failed to conduct the conduct the pre-litigation conciliation efforts required by the ADA.

The EEOC now asks the Court for summary judgment on Amsted's defense of failure to conciliate. It points to an affidavit from an EEOC official stating essentially that Amsted was informed of Ingram's complaint, was invited to conciliate the matter, and had communications with the EEOC, but that no conciliation agreement acceptable to the EEOC was reached. Amsted contends that although the EEOC went through the motions of attempting to conciliate, it did not, in fact, properly and meaningfully endeavor to resolve the conflict.

### III. Analysis

This case is governed by the Supreme Court's recent decision in *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015). Applying the law as set forth in *Mach Mining*, the Court

concludes that the EEOC's efforts to conciliate were adequate to satisfy statutory requirements.

    A.    <u>Judicial Review of Conciliation Efforts</u>

As a preliminary matter, neither party disputes that the ADA requires the EEOC to attempt to conciliate a dispute stemming from a complainant's discrimination charge before filing suit. *See Mach Mining*, 135 S. Ct. at 1651. In 42 U.S.C. § 12117(a), the ADA incorporates the enforcement procedure set forth in Title VII, which states, in pertinent part, that if the EEOC determines there is reasonable cause to believe an individual's charge of discrimination is true, the EEOC "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). If the EEOC is "unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." 42 U.S.C. § 2000e-5(f)(1). Thus, the EEOC's efforts to conciliate are a precondition to its filing a lawsuit. To ensure candor in the conciliation efforts, the events in the conciliation process are secret: "Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b); *accord Mach Mining*, 135 S. Ct. at 1655.

The Supreme Court recently addressed in *Mach Mining* whether and to what extent a federal court can review the EEOC's conciliation efforts to determine whether the conciliation requirement has been satisfied. In *Mach Mining*, a woman filed a charge complaining that Mach Mining, refused to hire her as a coal miner because of her sex. *Mach Mining*, 135 S. Ct. at 1650. The EEOC found reasonable cause to believe her charge was true, so sent Mach Mining a "letter of

determination" inviting Mach Mining to resolve the matter informally and promising an EEOC representative would contact the company to begin the process. *Id.* A year later, the EEOC sent Mach Mining another letter stating that conciliation efforts had failed, and shortly thereafter the EEOC brought suit under Title VII. *Id.* Mach Mining complained that the EEOC's conciliation efforts in the year between the "letter of determination" and the letting finding conciliation unsuccessful were not in good faith and therefore did not satisfy the agency's duty to conciliate before filing suit. *Id.* The EEOC, on the other side, argued its conciliation efforts are not subject to judicial review. *Id.*

The Supreme Court held that the EEOC's conciliation efforts are subject to judicial review but that that review is narrow. *Id.* at 1649. It put forth a two-part test to determine whether the EEOC complied with the statutory requirement of 42 U.S.C. § 2000e-5(b):

> [T]he EEOC, to meet the statutory condition, must tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance.

*Mach Mining*, 135 S. Ct. at 1652. To satisfy the first part of the test, "the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause.' Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result." *Id.* at 1655-56 (internal citation omitted).

To satisfy the second part of the test, "the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id*. at 1656. However, it "need only 'endeavor' to conciliate a claim, without having to devote a set amount of time or resources to that project." *Id.*

at 1654. There are no specific steps or measures that the EEOC is required to take, and the EEOC has full discretion to use whatever informal procedure it deems appropriate in each case. *Id.* The EEOC also has full discretion to determine when such informal means are unsuccessful and when to proceed to litigation. *Id.*

Judicial review is limited to the determination of "whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.,* statements made or positions taken) during those discussions." *Id.* at 1656. "Bookend" letters from the EEOC inviting conciliation and then finding conciliation was unsuccessful, without evidence that between the letters the EEOC actually attempted to engage in discussions to remedy the discriminatory employment practice, are not enough. *Id.* at 1653. However, "[a] sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.* at 1656. The employer, however, may counter such an affidavit with evidence that the EEOC "did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim," at which point the Court must conduct an evidentiary hearing to determine whether to stay the action and order the EEOC to conduct is conciliation obligations. *Id.*

    B.    <u>Application</u>

Here, the EEOC points to its February 28, 2013, and February 12, 2014, bookend letters *supplemented by an affidavit* from EEOC St. Louis office Deputy District Director L. Jack Vasquez authenticating the letters and stating that:

> Between February 28, 2013, and February 12, 2014, the Commission engaged in communications with Amsted to provide Amsted the opportunity to remedy the discriminatory practices described in the Determination, including sending Defendant a conciliation proposal. The Commission was unsuccessful in its efforts.

Vasquez Aff. ¶ 11. It argues this evidence conclusively shows under the *Mach Mining* standard that it satisfied its obligation to conciliate the claims in this case.

In response, Amsted describes the content of its communications[2] with the EEOC from its receipt of the Letter of Determination to the February 12, 2014, letter stating that conciliation had failed (Def.'s Summ. J. Resp. § III, ¶¶ 18-28). As the content of these communications cannot be "used as evidence in a subsequent proceeding without the written consent of the persons concerned," 42 U.S.C. § 2000e-5(b), and there is no evidence the EEOC, Ingram or any other potential class member has consented to such use, the Court disregards this evidence other than to confirm that communication between the EEOC and Amsted occurred. In fact, *Mach Mining* requires such facts be stricken, *Mach Mining*, 135 S. Ct. at 1655, and the Court accordingly will grant the EEOC's motion to strike (Doc. 40).[3]

As for the substance of Amsted's response, it argues the EEOC has not satisfied the *Mach Mining* two-part test. It argues the EEOC has failed to satisfy the first requirement – informing the employer about the specific allegations against it – because the February 28, 2013, Letter of Determination contains only conclusory statements and does not outline or summarize the evidence on which the EEOC relied in making its determination and does not assist Amsted in

---

[2] Amsted states that it has not revealed the substantive details of the communications but has only described the relative efforts to conciliate. This is a distinction without a difference. The ADA prevents the use of anything "said or done" during the conciliation process. 42 U.S.C. § 2000e-5(b). Whether an employer reaches out to the EEOC in a letter or phone call constitutes something "done" as much as the content of that outreach effort constitutes something "said." Neither can be considered by the Court in reviewing the EEOC's conciliation efforts. Additionally, Amsted has failed it its quest to remove "content" from its description of "efforts." For example, it states it "continued to reiterate the multiple requests for information it made during the investigation phase." Def.'s Summ. J. Resp. 13. How does this statement not reveal that Amsted asked for more information?

[3] The Court need not consider the issue of prejudice because use of the evidence is strictly prohibited in these circumstances by statute regardless of prejudice. *See* 42 U.S.C. § 2000e-5(b).

understanding why the EEOC believes its employee screening process violates the ADA.   As for the second prong, Amsted argues that the EEOC failed to engage it in a "meaningful" discussion about the allegedly discriminatory practices.   Specifically, Amsted criticizes the content of the EEOC's post-reasonable cause finding communications – which, as noted above, the Court will not consider in deciding this motion – as not explaining the EEOC's reasons for believing Amsted's practices unlawful and as not aiming to achieve voluntary compliance with the ADA.

1. Notification

The EEOC appropriately notified Amsted of the allegations against it and who it believed suffered as a result of Amsted's alleged wrongful conduct.   As the *Mach Mining* court noted, this requirement is usually satisfied by a letter of determination finding reasonable cause to believe a statutory violation has occurred.   The Court is given pause in this case, however, because the relevant documents in this case are notably devoid of specifics.   For example, Ingram's charge does not name the relevant disability.   Nor is the Letter of Determination clear.   It simply states Amsted's position that it failed to hire Ingram because he had had previous surgeries for carpal tunnel syndrome and would be at risk for further injuries, and the conclusion that the EEOC found reasonable cause to believe Amsted discriminated against Ingram on the basis of disability.   There is no indication the disability that the EEOC was referencing was related to carpal tunnel syndrome.

However, in light of other statements from the EEOC to Amsted, the Court believes adequate notification was given.   For example, the EEOC's June 10, 2011, letter sent to Amsted during its pre-reasonable cause finding investigation, made clear that the investigation concerned people who were not hired because of a record of carpal tunnel syndrome or because they failed a

nerve conduction test. Additionally, in the Letter of Determination, the EEOC expressly stated that it believed Amsted had discriminated against a class of chipper applicants based on the outcome of a nerve conduction test and that this constituted discrimination on the basis of disability, perceived disability and/or record of disability. Thus, despite the imprecision and ambiguity of Ingram's charge and the Letter of Discrimination as it related to Ingram, the information received by Amsted, when viewed as a whole, was sufficient inform it of the specific allegations of discrimination against Ingram and a class of applicants on the basis of carpal tunnel syndrome, perceived carpal tunnel syndrome (based on the outcome of nerve conduction tests) or a record of carpal tunnel syndrome.

    2.    Conciliation

The EEOC appropriately tried to engage Amsted in some form of discussion so as to give it an opportunity to remedy the allegedly discrimination. The EEOC's affidavit is evidence that it engaged in communication with Amsted between the "bookend" letters but was unable to reach a satisfactory conciliation agreement. Amsted concedes that communications were made, but asks the Court to look at the content of those communications to show that the EEOC's effort to conciliate this case was a sham.

In support of this argument, with one exception, Amsted cites caselaw predating *Mach Mining*. Those cases are not persuasive to the Court in light of *Mach Mining*'s holding. The one case Amsted cites that was decided after *Mach Mining*, *EEOC v. OhioHealth Corp.*, No. 2:13-CV-780, 2015 WL 3952339 (S.D. Ohio June 29, 2015), is not persuasive to the Court either. There, the court impermissibly considered positions taken during the conciliation process (that is, what was "said or done" in the process), specifically, whether a "final" offer was made and the

EEOC's failure to provide supporting calculations for a damage demand. *See OhioHealth*, 2015 WL 3952339 at *3-*4. Additionally, the *OhioHealth* court entertained the possibility that the EEOC "opened the door" to consideration of such facts, an exception to nondisclosure that is not recognized by the statute. *Id.*

Furthermore, the *OhioHealth* court's conclusion that an unsupported take-it-or-leave-it demand letter could not constitute an attempt to engage in conciliation, *see id.* at *4, is at odds with *Mach Mining*'s rejection of a "negotiation checklist" that would require the EEOC to lay out the factual and legal bases for its positions and provide calculations underlying its monetary demands. *See Mach Mining*, 135 S. Ct. at 1653-54 (setting forth the employer's proposed checklist). Instead, the *Mach Mining* court observed that the EEOC's attempts to conciliate

> need not involve any specific steps or measures; rather, the Commission may use in each case whatever "informal" means of "conference, conciliation, and persuasion" it deems appropriate. And the EEOC alone decides whether in the end to make an agreement or resort to litigation: The Commission may sue whenever "unable to secure" terms "acceptable *to the Commission*." § 2000e–5(f)(1) (emphasis added). . . . Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief. For a court to assess any of those choices . . . is not to enforce the law Congress wrote, but to impose extra procedural requirements.

*Mach Mining*, 135 S. Ct. at 1654-55. The *OhioHealth* court's rule would remove the EEOC's option of proposing a firm, "bare-minimum offer" that is the only result it would accept, and would instead require it to "lay all its cards on the table." As *Mach Mining* noted, the statute leaves such strategic choices to the agency.

While it is sympathetic with Amsted's desire to more fully understand the basis for the EEOC's position during conciliation, and it applauds Amsted's willingness to engage in a

back-and-forth discussion, the Court cannot require such a discussion take place.  *Mach Mining* holds that it cannot impose additional procedural requirements on the EEOC beyond engaging in some form of discussion, even if it is simply the extension of a take-it-or-leave-it offer.  There is no dispute of fact that EEOC has done that, so its obligation to conciliate is satisfied.  Further discovery on this issue would not be productive in light of the fact that evidence discovered could not be used as evidence in light of 42 U.S.C. § 2000e-5(b).

IV.  **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the EEOC's motion for summary judgment on the issue of whether the EEOC has adequately attempted to conciliate this dispute, and finds in favor of the EEOC on Defense 4 of Amsted's Amended Answer (Doc. 33);

- **GRANTS** the EEOC's motion to strike (Doc. 40);

- **DIRECTS** the Clerk of Court to place Amsted's summary judgment response and its attachments (Doc. 39) **UNDER SEAL**;

- **ORDERS** Amsted to file on or before February 4, 2016, a redacted response and supporting affidavits removing all references to what was said or done by or between the parties between the February 28, 2013, and February 12, 2014, letters.  This will serve to maintain the secrecy of the conciliation efforts without depriving the public of access to court records.

**IT IS SO ORDERED.**
**DATED:   January 20, 2016**

s/ J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**DISTRICT JUDGE**