EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

        v.

AMSTED RAIL CO., INC.,

        Defendant.

Case No. 14-cv-1292-JPG-SCW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant Amsted Rail Co., Inc. ("Amsted") to exclude the expert testimony of Lane Hudgins Ph.D. and to strike her supplemental reports (Doc. 101). Plaintiff Equal Employment Opportunity Commission ("EEOC") has responded to the motion (Doc. 105), and Amsted has replied to that response (Doc. 110).

## I.     Background

The EEOC disclosed Dr. Hudgins as a forensic economist retained to give an opinion about the economic losses – that is, back pay – suffered by a class of claimants in this employment discrimination case under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a). The Court has already found in favor of the EEOC on the issue of liability (except for two dismissed claimants), and the only remaining issues are economic. The EEOC disclosed Dr. Hudgins and her February 3, 2016, Initial Report (Doc. 101-1) in a timely manner on February 4, 2016. Shortly before Dr. Hudgins' April 11, 2016, deposition, the EEOC produced an April 7, 2016, Supplemental Report (Doc. 101-2), and following her deposition, it produced an August 12, 2016, Second Supplemental Report (Doc. 101-3). Trial of the remaining issues is anticipated to be in March and May 2018.

Amsted asks the Court to exclude Dr. Hudgins' testimony for on two general grounds: (1) her supplemental reports are not true supplements and are instead new reports disclosed beyond the report disclosure deadline and (2) her testimony does not satisfy the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). On the other side, the EEOC contends Dr. Hudgins' reports are proper – indeed, required – supplements to her Initial Report. It also contends her testimony should be allowed under Federal Rule of Evidence 702 and *Daubert*.

## II.      Timely Disclosure of Report

Federal Rule of Civil Procedure 26(a)(2) provides that a party must disclose the identity of any witness it may use at trial to offer expert testimony and, unless stipulated or ordered otherwise, a written report that includes, among other things, the witness's opinions, the basis and reasons for those opinions, the facts or data the witness considered in forming those opinions and the witness's qualifications to serve as an expert. These disclosures must be made at the time ordered by the Court, Fed. R. Civ. P. 26(a)(2)(D), and must be supplemented if the party learns that the disclosures are incomplete or incorrect, Fed. R. Civ. P. 26(a)(2)(E) & (e)(1)(A). Specifically with respect to expert witnesses, additions or changes to an expert's report or information given during an expert's deposition must be made by the time pretrial disclosures are due, which is generally thirty days before trial. Fed. R. Civ. P. 26(a)(3)(B) & (e)(2). If a party fails to comply with these disclosure requirements, the evidence may not be used unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

Amsted asks the Court to strike the supplemental reports because they are not true supplements to the Initial Report but are instead essentially new reports disclosed after the report

disclosure deadline.   Amsted argues that the Initial Report was deficient and really only a preliminary report because it was not based on detailed information from the claimants regarding mitigation of their damages, which had not yet been obtained by the EEOC.   Instead, Dr. Hudgins relied on unsupported assumptions in the absence of information from the claimants.   Her supplemental reports account for additional mitigation information obtained from the claimants and display what Amsted characterizes as changes to her methodology.   As a consequence, the conclusions of the supplemental reports differ greatly from those of the Initial Report.   Amsted further argues the failure to disclose the Second Supplemental Report until after the report disclosure deadline and Dr. Hudgins' deposition prejudiced Amsted because it was too late to depose Dr. Hudgins.

The EEOC argues that the supplemental reports were true supplements required by Federal Rule of Civil Procedure 26(e) because the EEOC received new mitigation information from the claimants and learned of errors in the Initial Report.   The supplemental reports, it notes, include opinions on no new claims or issues but simply reflect new information and corrections regarding the same issues covered in the Initial Report.   It further argues that Amsted was not prejudiced by any delay in disclosure because Dr. Hudgins' opinions simply became more accurate (to the benefit of Amsted), because Amsted had sufficient information about Dr. Hudgins' methodology from her Initial Report to adequately prepare for her deposition, and because Amsted knew Dr. Hudgins would supplement her report as she received new information.

The Court has reviewed Dr. Hudgins' Initial Report, Supplemental Report, Second Supplemental Report, and deposition testimony and has determined that the supplements are just that – proper supplements – rather than new reports.   Dr. Hudgins prepared the Initial Report

based on the information she had at the time using her chosen methodology.   In subsequent

months, the parties engaged in discovery disputes over the production of mitigation information

from the claimants, much of which the EEOC had not yet obtained from the claimants.   The

EEOC eventually obtained the information from the claimants and produced it pursuant to the

Court's orders, and Dr. Hudgins incorporated it into her supplemental reports as required by

Federal Rule of Civil Procedure 26(a)(2)(E) and (e)(1)(A).

Additionally, in her deposition, Dr. Hudgins learned that some of the assumptions she used

in her methodology were incorrect – such as, for example, the date an employee became eligible to

participate in Amsted's 401(k) plan – and made corrections for such errors.   She also detected and

corrected some mathematical errors.   In the Second Supplemental Report, the operative report at

this time, she simply refined her calculations based on new information and the discovery of

errors.   By producing the Second Supplemental Report, the EEOC has not failed to comply with

the disclosure requirements of Rule 26(a)(2) but has appropriately supplemented Dr. Hudgins'

reports to reflect newly acquired information and to correct newly discovered errors.   Because the

Second Supplemental Report is not an improper supplement, neither Dr. Hudgins' testimony nor

her report will be excluded under Federal Rule of Civil Procedure 37(c)(1).[1]

However, as a precautionary measure, to the extent Amsted believes the Second

Supplemental Report contains new information for which it was not provided a fair opportunity to

cross-examine Dr. Hudgins, the Court will allow one further deposition of Dr. Hudgins limited to

the changes from the Supplemental Report to the Second Supplemental Report (or any

---

[1] The Court further notes that it is likely Dr. Hudgins will produce an additional supplement to
update her back pay opinion to reflect the time period to the current trial date.   To the extent that
forthcoming report simply reflects updated mitigation information from the claimants and the
passage of time, for the reasons stated in this order, the Court is unlikely to exclude Dr. Hudgins'
opinions reflected in that report or the report itself.

forthcoming report, should the parties chose to wait for another supplement). The deposition shall occur within fourteen days of the entry of this order or any other time to which the parties agree.

## III.     Federal Rule of Evidence 702 and *Daubert*

Federal Rule of Evidence 702 and the rule of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, describe the Court's evidentiary gatekeeping function. That rule aims to prevent the finder of fact from being confused or distracted by expert opinions that are not relevant or reliable for one reason or another – for example, the lack of qualification of the expert rendering the opinion, the insufficiency of facts or data upon which the opinion is based, the unreliability of the principles or methods used to arrive at the opinion, or the unreliability of the application of those principles or methods to the facts.

Where the finder of fact is a jury, the importance of the Court's preliminary gatekeeping function is highest, but when the Court is the finder of fact, "the usual concerns of the rule – keeping unreliable expert testimony from the jury – are not present." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010). "[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006); *accord Estate of Stuller v. United States*, 811 F.3d 890, 895 n.3 (7th Cir. 2016). "Where a trial judge conducts a bench trial, the judge need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence, even though he must determine admissibility at some point." *Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900-01 (7th Cir. 2016) (citing *Metavante*, 619 F.3d at 760). The

reliability and relevancy requirements still must be established, but it is not necessary to do so before the evidence is presented. *Metavante*, 619 F.3d at 760 (citing *In re Salem,* 465 F.3d at 776-77).

In this case, the issue of back pay, an equitable issue in an ADA case, will be tried to the Court or by agreement to a Special Master, not a jury. Thus, there are no concerns about keeping unreliable expert testimony from a jury, and the admissibility decision under Rule 702 and *Daubert* can be left to the finder of fact at the time of trial. The Court is inclined to do this for all factors of the reliability test except for Dr. Hudgins' qualifications, which the Court believes it would be advisable to decide at this point.

Expert testimony may be offered only by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To determine if an expert is qualified to testify on a particular matter, a court should "consider a proposed expert's full range of practical experience as well as academic or technical training." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *accord United States v. Garcia Parra*, 402 F.3d 752, 758 (7th Cir. 2005).

Amsted challenges Dr. Hudgins' qualification to express an opinion on the back pay lost by the claimants. It argues that she lacks the necessary experience in testifying in failure-to-hire cases and has little experience in cases involving discrimination, a large number of claimants or a unionized workforce. Instead, her experience centers on wrongful death and products liability cases.

The EEOC argues that Dr. Hudgins' litigation experience is not as relevant as her forensic accounting knowledge, skill, experience, training, and education, the subject of her opinions.

6

Even so, it notes, she has given opinions on the subject of economic losses to individuals because of loss of work in dozens of cases. It argues that the cause of the economic losses about which she has opined – be it wrongful death, injury, or employment discrimination – is irrelevant to the calculation of that economic loss, and that she is clearly qualified to opine on that issue.

The Court finds Dr. Hudgins has the necessary knowledge, skill, experience, training, or education to qualify her as an expert to give an opinion as to the claimants' lost back pay. The materials attached to the Initial Report and Dr. Hudgins' deposition testimony show that she is qualified by a number of credentials and experiences. She has a Ph.D. in economics and trade theory, a bachelor of arts degree in economics, and a bachelor of commerce degree in finance. She has teaching experience, has published articles, has made presentations, and has participated in professional organizations in the fields of finance and economics. She also has a decade of experience in economic consulting in which she analyzed economic damages for litigation purposes and has provided expert services in nearly a hundred cases. In at least sixteen of those cases she has given deposition or trial testimony since 2012. That the types of cases she has worked on in the past may not involve the same cause of action as in this case does not matter so long as she has calculated economic loss suffered by a worker because he or she did not have or could not do a certain job. The Court believes that Dr. Hudgins' economic training and education, knowledge of the field, and experience in performing economic loss calculations for individual workers renders her qualified to give an expert opinion on lost back pay in this case.

The Court reserves ruling on the sufficiency of the facts or data, the reliability of the principles and methods, and the reliability of the application of the principles and methods to the facts of this case. Those issues can easily be weighed at the time of the presentation of her back

pay opinion at trial and can be disregarded by the Court or Special Master if they do not comport

with the standards in Federal Rule of Evidence 702 or *Daubert*.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES without prejudice** Amsted's motion to

exclude the expert testimony of Lane Hudgins Ph.D. and to strike her supplemental reports (Doc.

101).

**IT IS SO ORDERED.**
**DATED:    January 29, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
